## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROY WINDOM,** | : | |
| **Plaintiff** | : | **CIV. ACTION NO. 3:22-CV-1667** |
| **v.** | : | **(JUDGE MANNION)** |
| **JOHN RIVELLO, *et al.*,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Presently before the court in this prisoner civil rights case are two motions to dismiss plaintiff's second amended complaint and several related motions seeking to clarify or amend the defendants who are being sued in the case. For the reasons set forth below, the motions to dismiss will be granted, and plaintiff will be granted leave to file a third amended complaint only with respect to his claims against Trice, the three John Doe defendants who allegedly assisted plaintiff on March 25, 2022, and the Jane Doe regional director defendant who has subsequently been identified as Erica Benning.

## I.    BACKGROUND

Plaintiff, Roy Windom, who has been incarcerated in SCI-Huntingdon at all relevant times, brings the instant case pursuant to 42 U.S.C. §1983

alleging various civil rights violations arising from an incident in which he fell from his bunk bed and sustained injuries to his knee. Windom filed his original complaint on October 24, 2022. (Doc. 1). The case is currently proceeding on Windom's second amended complaint, which he filed on October 31, 2023. (Doc. 30).

According to the allegations in the second amended complaint, Windom was exiting the top bunk bed in his cell on March 25, 2022, when the safety bar on the bunk broke. (*Id.* at 4).[1] Windom fell from the bunk from a height of about five feet off the ground. (*Id.*) Because his right leg was stuck on the top bunk when he fell, the entirety of his body weight came down on his left leg. (*Id.*) Windom's knee buckled, and he heard a pop and felt a sharp pain. (*Id.*) His back then crashed into the floor. (*Id.*)

Windom's cellmate called for staff to come to the cell to assist him. (*Id.*) Four prison staff members came to the cell, all of whom are named as defendants: a John Doe sergeant, a John Doe "White Shirt,"[2] a John Doe

---

[1] The court cites the second amended complaint using the page numbers corresponding to the court's ECF header due to inconsistent paragraph numbering in the second amended complaint.

[2] The court takes judicial notice that "white shirt" is a slang term frequently used by inmates and staff members in the Pennsylvania Department of Corrections to refer to supervisory correctional officers, such as sergeants, lieutenants, or captains.

correctional officer, and defendant Trice, a nurse in the prison. (*Id.*) Trice examined Windom and noticed that his knee was swollen and that he was having trouble bending the knee. (*Id.*) Windom requested that defendants use a stretcher to transport him to the prison's medical unit. (*Id.* at 5). At this point, Trice spoke with two of the John Doe defendants about seeing whether Windom could stand. (*Id.*) The supervisory officers directed the correctional officer to lift Windom up to see if he could put any weight on the injured leg. (*Id.*) The officer did so, at which point Windom allegedly fell to the floor again because he was unable to put weight on his injured leg. (*Id.*)

After his second fall, Windom again requested the use of a stretcher. (*Id.*) The defendants allegedly began "to complain about [Windom's] weight, and the difficulties in getting a stretcher from the third tier due to the layout of the facility." (*Id.*) Instead of using a stretcher, the supervisory officers allegedly directed the correctional officer to lift Windom up and then assist him in getting down the stairs to the medical department. (*Id.*)

Upon arrival in the medical department, defendant Trice again examined Windom's knee. (*Id.*) Trice again observed that the knee was swollen and that Windom had trouble bending it. (*Id.*) Trice gave him an ace bandage and crutches and advised him that he would be given an x-ray later that day. (*Id.*)

Sometime later, Windom attended a previously scheduled appointment with defendant Mahli, a doctor in the prison, for treatment of Windom's asthma. (*Id.* at 5-6). Windom told him about his knee injuries, and Mahli purportedly stated that he would examine Windom's x-rays and follow up with Windom if necessary. (*Id.* at 6). Windom continued to experience problems with his injured knee and requested an x-ray, but the Jane Doe regional director for medical services allegedly denied the request. (*Id.*)

Windom requested an MRI for his injured knee, but a physician's assistant in the prison named "Jackie" informed him that he would have to go through physical therapy before he could get an MRI. (*Id.*) Windom agreed to this and began physical therapy in September 2022. (*Id.*) An unnamed physical therapist determined that Windom may have a torn LCL, MCL, and meniscus. (*Id.*) The physical therapist gave Windom exercises to do in his cell and stated that he would be reexamined by a physical therapist in approximately two months. (*Id.*) Windom subsequently attended two more physical therapy sessions. (*Id.*) The physical therapist concluded that Windom was not progressing with physical therapy and referred him back to SCI-Huntingdon's medical staff. (*Id.* at 7). The medical staff allegedly gave him limited treatment after this other than medication to reduce his swelling and pain. (*Id.*)

4

Windom was again seen by defendant Mahli. (*Id.*) Mahli did not examine the knee but instead asked Windom to describe his symptoms. (*Id.*) Mahli stated that he would give Windom three cortisone shots over the next three months and that if these shots did not improve Windom's condition, he would refer him for an MRI. (*Id.*) Windom was then allegedly seen by defendant Kollman [3] another doctor in the prison, who concluded that Windom may have had a torn MCL and torn LCL. (*Id.*) Kollman provided him with a "knee sleeve," but did not follow up with Windom or provide him any additional treatment after this visit. (*Id.*)

After Windom complained to the medical department about "rubbing" and pain in his knee, the medical department referred him for an MRI. (*Id.* at 7-8). Windom was given an MRI on July 12, 2023, approximately sixteen months after he suffered his original injury. (*Id.* at 8). The results of the MRI showed that Windom may have a torn ACL, a torn meniscus, and other ligament damage. (*Id.*) The medical department recommended that Windom

---

[3] Windom has acknowledged that this defendant is erroneously named in the complaint and requests to correct the name to the doctor who actually treated him. (*See* Doc. 43). The court uses the defendant's name as it appears in the second amended complaint in this section of the opinion to avoid confusion. The court addresses the request to rename the defendant later in this opinion.

be seen by an orthopedist, but as of the date of the second amended complaint he had not been seen by an orthopedist. (*Id.*)

The second amended complaint asserts the following claims for relief: (1) a claim for cruel and unusual punishment in violation of the Eighth Amendment against Trice and the three John Doe officers who also assisted Windom on the date of his injury; (2) claims against Mahli, Kollman, and the other medical professionals who treated him for deliberate indifference to a serious medical need in violation of the Eighth Amendment; (3) a claim against the Jane Doe regional director alleging that enforcing a policy that required Windom to attend physical therapy before receiving an MRI constitutes cruel and unusual punishment in violation of the Eighth Amendment; and (4) a claim against defendant Rivello, SCI-Huntingdon's superintendent, for allegedly failing to train his subordinate correctional officers in how to remove an injured inmate from an upper floor of the prison and for failing to inspect the cell for the structural defects that allegedly caused Windom's fall. (*Id.* at 8-10).

On November 22, 2023, defendants Trice and Rivello moved to dismiss the second amended complaint. (Doc. 34). Windom responded to the motion on January 2, 2024. (Doc. 39). Windom concedes that Rivello should be dismissed but opposes Trices's request for dismissal. (*Id.*)

On January 12, 2024, defendant Kollman filed an affidavit attesting to his non-involvement in Windom's claims. (Doc. 40). According to the affidavit, Kollman has not worked in a prison since the spring of 2021, and therefore did not provide any medical care to Windom for his injuries that occurred in March 2022. (*Id.*) In response to this affidavit, Windom moved to amend the identity of this defendant to a John Doe defendant. (Doc. 41). Windom represents that he named Kollman as a defendant because Kollman was named as a physician working in the prison in an inmate handbook that was distributed to Windom around the relevant time. (*Id.*) Windom inferred from this handbook that Kollman was the doctor who treated him. (*Id.*)

On February 13, 2024, defendant Mahli moved to dismiss the second amended complaint. (Doc. 42). He filed a brief in support of the motion on February 15, 2024. (Doc. 44). Mahli argues that the claims against him should be dismissed for failure to state a claim upon which relief may be granted and for Windom's failure to exhaust administrative remedies. (*Id.*)

On February 13, 2024, Windom moved to correct the identities of two defendants. (Doc. 43). First, he seeks to correct the name of the Jane Doe regional director to Erica Benning. (*Id.*) Second, he seeks to correct the name of the defendant doctor originally named as "Kollman" in the second amended complaint to David Edwards. (*Id.*) Windom then moved to

voluntarily dismiss his claims against Edwards on March 11, 2024. (Doc. 46). Windom concedes that he has not exhausted administrative remedies against this defendant. (*Id.*)

On March 11, 2024, Windom responded to Mahli's motion to dismiss. (Doc. 47). Windom concedes that dismissal of his claims against Mahli is appropriate because he failed to exhaust administrative remedies, but he argues that his second amended complaint otherwise states a deliberate indifference claim upon which relief may be granted. (*Id.*) Windom accordingly requests that any dismissal of his claims against Mahli be without prejudice to his right to file a new complaint against Mahli after he has attempted to exhaust administrative remedies and/or been released from prison. (*Id.* at 9-10). Mahli filed a reply brief on March 12, 2024, in which he argues that the request for dismissal to be without prejudice to the filing of a new lawsuit should be denied because the "failure to exhaust would be present with any future complaint filed by Windom." (Doc. 48 at 2). Windom filed a sur reply[4] on March 28, 2024, reiterating his contention that while

---

[4] Under Local Rule 7.7, a party must seek leave of the court to file a sur reply brief. Windom's motion "request[s] permission from this court to file a brief response to defendant[] Mahli's reply to his motion to dismiss." (Doc. 49). The court grants Windom's request and considers his sur reply on its merits.

dismissal of the claim against Mahli is appropriate, the dismissal should be without prejudice to his right to file a new lawsuit against Mahli. (Doc. 49).

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief may be granted." Under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009 (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plaint statement of the claim, Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 556). "[L]abels and conclusions" are not enough, *Twombly*, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

In resolving a motion to dismiss, the court thus conducts "a two-part analysis." *Fowler*, 578 F.3d at 210. First, the court separates the factual elements from the legal elements and disregards the legal conclusions. *Id.* at 210-11. Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Id.* at 211 (quotations omitted).

Courts must liberally construe complaints brought by *pro se* litigants. *Sause v. Bauer*, 585 U.S. 957, 960 (2018). *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## III.   DISCUSSION

### A.   Section 1983

Section 1983 authorizes redress for violations of constitutional rights and provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

10

42 U.S.C. §1983. Thus, to establish a successful claim under Section 1983, a plaintiff must demonstrate that the challenged conduct was committed by a person acting under color of state law and deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997). By its terms, Section 1983 does not create a substantive right, but merely provides a method for vindicating federal rights conferred by the United States Constitution and the federal statutes that it describes. *Baker v. McCollan*, 443 U.S. 137 (1979).

In light of the myriad motions filed by the parties seeking dismissal of certain claims and altering or clarifying which defendants are being sued, the court will analyze the claims against the named defendants separately to aid the reader's understanding.[5] For the sake of clarity for the remainder of this opinion, the court will grant Windom's request to correct the identities of the Jane Doe regional director defendant and defendant Kollman to Erica Benning and David Edwards, respectively. Thus, except where otherwise necessary to explain the procedural history, the court will refer to these

---

[5] The court does not analyze Windom's claims against the numerous defendants named as John or Jane Does in the second amended complaint—including the defendant who Windom has subsequently identified as Erica Benning—because these defendants have not been served and therefore have not responded to the second amended complaint.

defendants as "Benning" and "Edwards" throughout the remainder of this opinion.

### B.   Defendant Rivello

Windom brings claims against defendant Rivello, SCI-Huntingdon's superintendent, for his alleged failure to train his subordinates and failure to inspect the premises of the prison. (Doc. 30). Rivello has moved to dismiss these claims, (Doc. 34), and Windom concedes they should be dismissed, (Doc. 39). The court will accordingly dismiss all claims against Rivello with prejudice.

### C.   Defendants Edwards and Mahli

The second amended complaint asserts claims against a defendant identified as Kollman for deliberate indifference to a serious medical need. (Doc. 30). After Kollman filed an affidavit representing that he did not treat Windom, Windom filed multiple documents to clarify the identity of this defendant, ultimately noting that the defendant should be identified as David Edwards. (Docs. 41, 43). Since that time, however, Windom has moved to voluntarily dismiss his claims against this defendant without prejudice because he failed to exhaust administrative remedies against him. (Doc. 46).

The second amended complaint similarly seeks to hold defendant Mahli liable for deliberate indifference to a serious medical need. (Doc. 30).

Mahli has moved to dismiss for failure to state a claim and failure to exhaust administrative remedies. (Doc. 42). Windom concedes that dismissal of the claims against Mahli is appropriate for failure to exhaust administrative remedies, but he urges the court to nonetheless find that the second amended complaint states a deliberate indifference claim against Mahli upon which relief may be granted. (Doc. 47). Windom also requests that any dismissal of his claims against Mahli—like his claims against Edwards—be dismissed without prejudice to his right to file a new lawsuit. (*Id.*)

In light of Windom's concession that he failed to exhaust administrative remedies with respect to his claims against both Edwards and Mahli, the court will dismiss these claims. The dismissal of these claims will be without prejudice to Windom's right to file a renewed lawsuit. Although Mahli argues that this is improper and that the claims should be dismissed with prejudice because the "failure to exhaust would be present with any future complaint filed by Windom," the court cannot reach this conclusion as a matter of law at this stage. There may be circumstances present at the time Windom files a new lawsuit that would excuse exhaustion of administrative remedies. *See, e.g.*, *Garrett v. Wexford Health*, 938 F.3d 69, 84 (3d Cir. 2019) (noting that when previously incarcerated plaintiff files amended complaint after he has

13

been released from prison, the amended complaint is no longer subject to the administrative exhaustion requirement).

Whether Windom can ultimately satisfy the administrative exhaustion requirement and other procedural issues—such as whether a new lawsuit could satisfy the applicable statute of limitations—are not before the court and the court will not rule on them. Similarly, the court will not entertain Windom's request to find that the second amended complaint states a deliberate indifference claim against Mahli despite his failure to exhaust administrative remedies. Any finding on the merits of Windom's allegations would be an impermissible advisory opinion given that the court is dismissing the claims against Mahli for failure to exhaust. The court's ruling with respect to the claims against defendants Edwards and Mahli is limited to dismissing the claims for failure to exhaust administrative remedies without prejudice to Windom's right to refile the claims in a new lawsuit.

### D.   Defendant Trice

Windom's claim against defendant Trice sounds in deliberate indifference to a substantial risk of serious harm to Windom. To state a deliberate indifference claim, a plaintiff must allege (1) that he was subjected to a substantial risk of serious harm; (2) that the defendant was deliberately indifferent to the risk; and (3) that the defendant's deliberate indifference

caused the plaintiff harm. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021).

The court finds that the second amended complaint fails to state a deliberate indifference claim upon which relief may be granted against Trice. The complaint alleges two actions by Trice that could possibly give rise to a deliberate indifference claim: (1) lifting Windom to his feet to see if he could put weight on his injured leg, which caused him to fall to the floor; and (2) assisting Windom to walk down the stairs rather than carrying him down on a stretcher. At the time the defendants lifted Windom to his feet, it does not appear that Trice was subjectively aware that Windom could not place weight on his leg. The complaint alleges that Trice spoke with the other defendants about seeing whether Windom could put weight on the leg and that they lifted him up to check this. Thus, it appears from the allegations in the complaint that Trice was operating under the belief—based on her medical judgment after examining his knee—that Windom might be able to put weight on the leg and that lifting him to check whether this was the case would not cause him further harm. These allegations at most amount to negligence, which is not sufficient to state a deliberate indifference claim. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

15

Similarly, it does not appear that Trice acted with deliberate indifference to a risk of harm to Windom when she and the other defendants helped Windom walk down the stairs to the medical department rather than carrying him down on a stretcher. The second amended complaint alleges that the defendants made the decision to help Windom walk down the stairs rather than using a stretcher after Trice examined Windom's knee and the defendants discussed "the difficulties in getting a stretcher from the third tier due to the layout of the facility." (Doc. 30 at 5). From these allegations, it appears that Trice made the medical judgment that Windom walking down the stairs (with the assistance of the correctional officer who was present) would not cause further harm to Windom, and that doing so was preferable to using a stretcher given the logistical difficulties of using a stretcher in a prison housing block. This is further supported by the allegation that Trice reexamined Windom's knee immediately upon his arrival in the medical department after the walk down the stairs, indicating that she was acting with the intention of ensuring Windom's safety. Based on these allegations, it appears that Trice's actions were at worst negligent and do not qualify as deliberate indifference. The court will accordingly dismiss Windom's claim against Trice for failure to state a claim upon which relief may be granted.

### E.   Leave to Amend

Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile. *Phillips*, 515 F.3d at 245. As noted above, the court will dismiss the claims against defendants Edwards and Mahli without further leave to amend in this case but without prejudice to Windom's right to refile the claims in a new lawsuit. As for defendant Rivello, the court will deny further leave to amend these claims based on Windom's concession that Rivello should be dismissed. The court will grant leave to amend as to Windom's claims against defendant Trice, the three John Doe defendants who assisted Windom after his injury on March 25, 2022, and defendant Benning, because it appears that amendment of these claims would be neither inequitable nor futile.

## IV.   CONCLUSION

For the foregoing reasons, the court will: (1) grant Windom's motion to correct the identities of the Jane Doe regional director defendant and defendant Kollman to Erica Benning and David Edwards, respectively; (2) deny as moot Windom's motion to rename defendant Kollman as a John Doe

defendant;[6] (3) grant defendants' motions to dismiss and Windom's motion to voluntarily dismiss the claims against Edwards; and (4) grant Windom leave to file a third amended complaint with respect to his claims against defendant Trice, the three John Doe defendants who also assisted Windom after his injury on March 25, 2022, and defendant Benning. An appropriate order shall issue.

*s/ Malachy E. Mannion*
**Malachy E. Mannion**
**United States District Judge**

**Dated:    August 7, 2024**
**22-1667-01**

---

[6] As noted above, plaintiff subsequently clarified that this defendant is correctly identified as David Edwards.

18