UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROY WINDOM,** | : | |
| Plaintiff | : | CIV. ACTION NO. 3:22-CV-1667 |
| v. | : | (JUDGE MANNION) |
| **NURSE TRICE,** *et al.*, | : | |
| Defendants | : | |

### MEMORANDUM

Presently before the court in this prisoner civil rights case is defendants' motion to dismiss plaintiff's third amended complaint. For the reasons set forth below, the motion will be denied, and the court will impose a case management schedule to govern the remainder of this case.

**I.   BACKGROUND**

Plaintiff, Roy Windom, who has been incarcerated in SCI-Huntingdon at all relevant times, brings the instant case pursuant to 42 U.S.C. §1983 alleging various civil rights violations arising from an incident in which he fell from his bunk bed and sustained injuries to his knee and back. Windom filed his original complaint on October 24, 2022. (Doc. 1). After two amendments, defendants moved to dismiss plaintiff's second amended complaint. (*See* Docs. 30, 34, 42).

The court granted the motions to dismiss on August 7, 2024. (Docs. 52-53). The court first dismissed all claims against defendant Rivello, the superintendent of SCI-Huntingdon, with prejudice, based on Windom's concession that the claims against him should be dismissed. (Doc. 52 at 12). The court then dismissed all claims against defendants Edwards and Mahli, who are both doctors who treated Windom's injuries, without further leave to amend but without prejudice to plaintiff's right to refile the claims in a new lawsuit based on Windom's failure to exhaust administrative remedies. (*Id.* at 12-14). The court dismissed the second amended complaint without prejudice to the extent it asserted civil rights claims against defendant Trice, and granted plaintiff leave to file a third amended complaint against her. (*Id.* at 14-17). The court additionally declined to address Windom's claims against defendant Benning and the John Doe defendants because they had not yet been served with process or responded to the complaint, but granted Windom leave to amend the claims against them.[1] (*Id.* at 11, 17).

Windom timely filed a third amended complaint on August 27, 2024. (Doc. 56). According to the allegations in the third amended complaint, Windom was exiting the top bunk bed in his cell on March 25, 2022, when

---

[1] Benning was initially identified as a Jane Doe defendant but had been identified shortly before the court issued its opinion. She has since been served with process and has responded to the claims against her.

the safety bar on the bunk broke. (*Id.* at 4). Windom fell from the bunk from a height of about five feet off the floor. (*Id.*) Because his right leg was stuck on the top bunk when he fell, the entirety of his body weight came down on his left leg. (*Id.*) Windom's knee buckled, and he heard a pop and felt a sharp pain. (*Id.*) His back then crashed into the floor. (*Id.*)

Windom's cellmate called for staff to come to the cell to assist him. (*Id.*) Four prison staff members came to the cell, all of whom are named as defendants: a John Doe sergeant, a John Doe "White Shirt,"[2] a John Doe correctional officer, and defendant Trice, a nurse in the prison. (*Id.*) Trice examined Windom, and Windom informed her that he had pain and swelling around his left knee and that he was unable to sit up straight due to pain and tightness in his back. (*Id.*) Trice allegedly asked Windom if he was able to stand, and Windom said that he could not and requested that he be taken out of the housing unit on a stretcher. (*Id.* at 4, 7). The defendants allegedly responded by complaining about Windom's weight and the difficulties of using a stretcher in a housing block. (*Id.* at 7). The complaint represents that stretchers have been used to transport prisoners out of housing blocks in the

---

[2] The court has previously taken judicial notice that "white shirt" is a slang term frequently used by inmates and staff members in the Pennsylvania Department of Corrections to refer to supervisory correctional officers, such as sergeants, lieutenants, or captains.

3

past, though because of the layout of the prison the stretcher must occasionally be swung out over the tier while it is being carried. (*Id.*)

Defendants allegedly compelled Windom to try to stand up on his injured leg. (*Id.*) Windom told them that he was in pain and had trouble straightening his leg. (*Id.*) The John Doe sergeant and John Doe white shirt nonetheless directed the John Doe correctional officer to lift Windom up. (*Id.*) The John Doe correctional officer allegedly picked up Windom with significant force, which allegedly caused Windom to brace himself on his injured leg. (*Id.*) Windom then fell to the floor because he was unable to put weight on the leg. (*Id.*)

After his second fall, Windom again requested the use of a stretcher. (*Id.*) The defendants again allegedly complained about Windom's weight and the difficulty of using a stretcher on an upper floor of a prison housing unit. (*Id.*) Windom reiterated his request for a stretcher and his concerns that he would fall again. (*Id.*) The correctional officer allegedly disregarded Windom's concerns and lifted him to his feet. (*Id.*)

Windom proceeded to walk down the housing unit stairs with the defendants. (*Id.*) Windom was allegedly in extreme pain that caused him to crumple over on multiple occasions. (*Id.*) The correctional officer purportedly did not assist Windom in any way other than holding him by the back of his

shirt and "forcibly guid[ing]" him down the steps. (*Id.*) Windom eventually made it to the bottom of the stairs, where the defendants placed him in a wheelchair. (*Id.* at 8). Trice again examined him and gave him ice, crutches, and an ACE bandage for his knee. (*Id.*) Trice additionally stated that he should receive an x-ray on the following day. (*Id.*)

Windom requested an MRI after receiving an x-ray. (*Id.*) Prison officials allegedly told him that under a policy imposed by defendant Benning, the prison's medical director, he had to go through physical therapy before he could have an MRI. (*Id.*) Windom then began physical therapy. (*Id.*) The physical therapist examined Windom's left knee, opined that he may have "a torn meniscus, LCL, and MCL," and prescribed Windom exercises to do in his cell. (*Id.*) The physical therapist purportedly only visited Windom three times over the next seven months, with each visit lasting approximately ten minutes. (*Id.*) The physical therapist allegedly told him that the physical therapy "was procedural in nature and it was nothing he could really do for plaintiff at the time." (*Id.*) After Windom's physical therapy concluded, prison officials continued to deny Windom an MRI for an additional five months. (*Id.*)

According to the third amended complaint, Windom was eventually diagnosed as having suffered a torn meniscus and a torn anterior cruciate ligament ("ACL") as a result of his fall from his bunk bed. (*Id.* at 7). The third

5

amended complaint advances claims for deliberate indifference in violation of the Eighth Amendment against Trice, Benning, and the three John Doe defendants. (*Id.* at 8-9). Defendants moved to dismiss the third amended complaint on September 11, 2024. (Doc. 60). Briefing on the motion is complete and it is ripe for review. (Docs. 63, 66).

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief may be granted." Under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009 (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plaint statement of the claim, Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

(quoting *Twombly*, 550 U.S. at 556). "[L]abels and conclusions" are not enough, *Twombly*, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

In resolving a motion to dismiss, the court thus conducts "a two-part analysis." *Fowler*, 578 F.3d at 210. First, the court separates the factual elements from the legal elements and disregards the legal conclusions. *Id.* at 210-11. Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Id.* at 211 (quotations omitted).

Courts must liberally construe complaints brought by *pro se* litigants. *Sause v. Bauer*, 585 U.S. 957, 960 (2018). *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### III. DISCUSSION

Section 1983 authorizes redress for violations of constitutional rights and provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. §1983. Thus, to establish a successful claim under Section 1983, a plaintiff must demonstrate that the challenged conduct was committed by a person acting under color of state law and deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997). By its terms, Section 1983 does not create a substantive right, but merely provides a method for vindicating federal rights conferred by the United States Constitution and the federal statutes that it describes. *Baker v. McCollan*, 443 U.S. 137 (1979).

Windom's claims allege deliberate indifference in violation of the Eighth Amendment. To state a deliberate indifference claim, a plaintiff must allege (1) that he was subjected to a substantial risk of serious harm; (2) that the defendant was deliberately indifferent to the risk; and (3) that the defendant's deliberate indifference caused the plaintiff harm. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021).

This court previously dismissed Windom's deliberate indifference claim against defendant Trice for failure to state a claim upon which relief may be granted. The court noted that at the time the defendants lifted Windom to his feet, it did not "appear that Trice was subjectively aware that Windom could

not place weight on his leg." (Doc. 52 at 15). Rather, the court reasoned, it appeared from the allegations in the second amended complaint "that Trice was operating under the belief—based on her medical judgment after examining his knee—that Windom might be able to put weight on the leg and that lifting him to check whether this was the case would not cause him further harm." (*Id.*) Based on these allegations, the court concluded that Trice's actions at most amounted to negligence rather than deliberate indifference. (*Id.*) The court similarly concluded that Windom had not alleged deliberate indifference by Trice in the decision to have Windom walk down the stairs rather than be carried out on a stretcher because the decision appeared to be based on Trice's medical judgment that Windom could walk down the stairs without exacerbating his injuries and the logistical difficulties of using a stretcher in the prison. (*Id.* at 16).

The court finds that Windom has cured the pleading deficiencies in his deliberate indifference claim against Trice in the currently operative third amended complaint. Windom alleges that Trice and the three John Doe defendants forcefully lifted him to his feet and compelled him to walk down the stairs despite his repeated protests that he could not straighten his leg or put weight on it. It also appears from the allegations in the currently operative complaint that, rather than actively assisting Windom down the

stairs, the correctional officer instead simply held him by the back of his shirt and forced him to keep walking. Finally, the amended complaint alleges that stretchers had been used to transport prisoners out of the housing unit in the past and that doing so in this instance was feasible. Based on these allegations, Windom has plausibly alleged that defendants took the actions they did simply because they did not want to carry Windom on a stretcher and not based on a subjective judgment that Windom could walk down the stairs safely.[3] These allegations are sufficient to allege deliberate indifference by Trice and the three John Doe defendants.

The court additionally finds that Windom has stated a deliberate indifference claim against defendant Benning. Defendants argue that

---

[3] Defendants argue that plaintiff's allegation that a stretcher would need to be swung out over the tier shows that they were not deliberately indifferent. As defendants explain:

> [I]f the stretcher were to be used, Plaintiff and the stretcher would have had to be swung and rotated precariously over the tier landing and the floor below. If the John Does would have any issues with the stretcher and Plaintiff's combined weight while swinging and rotating him over the open tier, he would have fallen to the ground level. This is an extremely serious risk that Nurse Trice and the John does avoided, by walking Plaintiff down the tier. Defendants cannot be deliberately indifferent to Plaintiff by avoiding this more serious risk posed by the stretcher.

(Doc. 63 at 9). Although defendants may be correct that foregoing a stretcher was justifiable to avoid a greater risk of harm to Windom, this is a factual question that this court cannot resolve at this stage of litigation.

Windom has failed to allege her personal involvement in the alleged civil rights violations, (*see* Doc. 63 at 10-13), but personal involvement in a civil rights violation may be established if "an official with final policymaking authority . . . establishes an unconstitutional policy that, when implemented, injures a plaintiff." *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 223 (3d Cir. 2015). "[T]o establish a claim against a policymaker under §1983 a plaintiff must allege and prove that the official established or enforced policies and practices directly causing the constitutional violation." *Id.*

Here, Windom alleges that Benning implemented a policy that all inmates seeking an MRI had to first undergo physical therapy, and that this policy led to significant delays in diagnosing and treating Windom's serious knee injuries. (*See* Doc. 56 at 7-8). It is also alleged that while Windom was undergoing physical therapy, the physical therapist told him that the physical therapy was simply "procedural" and could not actually help Windom. (*Id.* at 8). These allegations are sufficient to infer that the alleged policy was implemented to delay treatment for inmates in deliberate indifference to their health and safety and that the policy directly harmed Windom.

## IV. CONCLUSION

For the foregoing reasons, the court will deny the motion to dismiss, direct the defendants to answer Windom's third amended complaint, and

impose a case management schedule to govern the remainder of this case.

An appropriate order shall issue.

                                                *s/ Malachy E. Mannion*
                                                **Malachy E. Mannion**
                                                **United States District Judge**

**Dated:  May 8, 2025**
22-1667-02